UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CATHY WOODS (a/k/a ANITA CARTER), by and through her Personal Representative Linda Wade, <br><br>Plaintiff, <br><br> v. <br><br> CITY OF RENO, *et al.,* <br><br> Defendants. | Case No. 3:16-cv-00494-MMD-CWH <br><br> ORDER |

## I. SUMMARY

Plaintiff Cathy Woods a/k/a Anita Carter was exonerated in September 2014 through DNA evidence, after having served over 35 years in prison for a murder she did not commit. In this case, Plaintiff sues law enforcement officers who were involved in the investigation that led to her murder charge and conviction, the county district attorney who oversaw the investigation, the City of Reno, and Washoe County—for damages under 42 U.S.C. § 1983 arising from her wrongful conviction and incarceration. (ECF No. 67.) Before the Court is Plaintiff's motion for leave to file a Third Amended Complaint ("TAC").[1] (ECF No. 147 ("Motion").) Both because motions seeking leave to amend should be liberally granted, and Plaintiff's proposed amendments in her TAC are not futile, the Court will grant Plaintiff's Motion.

## II. BACKGROUND

The Court refers to its prior order on various Defendants' motions to dismiss ("Dismissal Order") for the relevant facts, and does not restate those facts here. (ECF No. 101 at 2-6.) As pertinent to Plaintiff's Motion, in the Dismissal Order, the Court dismissed

---

[1]Defendants Lawrence C. Dennison and the City of Reno filed a response (ECF No. 151), as did Defendants Calvin R.X. Dunlap and Washoe County (ECF No. 152). Plaintiff filed a reply (ECF No. 153).

Plaintiff's failure to intervene claim against Dunlap, and conspiracy claim against Dunlap and Dennison. (*Id.* at 29-33, 39.) Plaintiff seeks to file her proposed TAC to reinstate the failure to intervene claim against Dunlap, and the conspiracy claim against Dunlap and Dennison, having added additional factual allegations to her Second Amended Complaint ("SAC") based on information she allegedly uncovered in discovery. (ECF No. 147 at 3.) In the Dismissal Order, the Court dismissed Plaintiff's conspiracy claim without prejudice. (ECF No. 101 at 33, 39.) And while the Court dismissed Plaintiff's failure to intervene claim against Dunlap with prejudice, the Court invited Plaintiff to seek the Court's leave to file an amended complaint if discovery yielded facts supporting her failure to intervene claim. (*Id.* at 26 n.19.) Thus, the Dismissal Order does not bar Plaintiff's Motion.

### III. LEGAL STANDARD

Fed. R. Civ. P. 15 ("Rule 15") allows amendment only by leave of the court once responsive pleadings have been filed and in the absence of the adverse party's written consent. *See* Fed. R. Civ. P. 15(a). The Court has discretion to grant leave and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). "In exercising its discretion, 'a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Nonetheless, the Court may deny leave to amend if: (1) it will cause undue delay; (2) it will cause undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### IV. DISCUSSSION

Plaintiff argues the Court should grant her Motion because discovery has revealed facts allowing her to make more detailed factual allegations regarding her failure to intervene and conspiracy claims, and none of the Rule 15 factors weigh against granting her Motion. (ECF No. 147.) Defendants primarily argue that Plaintiff's Motion should be

2

denied because her Motion is brought in bad faith and her proposed amendments are futile.[2] (ECF Nos. 151, 152.) The Court agrees with Plaintiff that the Court should grant her leave to amend here, especially given Rule 15's edict that leave should be freely given. The Court first addresses below Defendants' bad faith argument, and then addresses their futility argument.

### a. Bad Faith

Dennison argues that Plaintiff's Motion is brought in bad faith—and should be denied on that basis. (ECF No. 151 at 5.) More specifically, Dennison argues that Plaintiff's proposed amendments contradict her discovery responses and are unsupported by the facts that have been adduced in discovery. (*Id.* at 2-4, 5.) The Court disagrees. Having reviewed them, the Court finds no contradiction between Plaintiff's proposed additions in the TAC and her discovery responses. (ECF Nos. 147-1, 151-1.) The Court further rejects as premature Dennison's argument that Plaintiff's proposed additions are unsupported by the facts that have been adduced in discovery. At this phase in the litigation, the Court must assume that the allegations in Plaintiff's complaint are true, and relies both on Plaintiff's counsel's representations and the backstop of Fed. R. Civ. P. 11 that those allegations have sufficient evidentiary support. (ECF No. 153 at 11-14.) Further, to the extent Dennison's bad faith argument is really that he disagrees the evidence establishes what Plaintiff alleges it establishes, that argument is properly made to the jury at trial. In sum, the Court is not persuaded it should deny Plaintiff's Motion because it was brought in bad faith.

### b. Futility

Further, the Court disagrees with Defendants that Plaintiff's proposed amendments are futile. (ECF Nos. 151 at 5, 152 at 3-8.) "Amendment is futile only if no

---

[2]Defendants also argue in passing that this is not the first time Plaintiff has amended her complaint, and thus her repeated attempts at amendment should be held against her. (ECF Nos. 151 at 5, 152 at 2.) Plaintiff responds this is the first time she has attempted to reinstate her conspiracy and failure to intervene claims, so that Rule 15 factor does not weigh against permitting amendment here. (ECF No. 153 at 3.) The Court agrees with Plaintiff.

3

set of facts can be proven under the amendment that would constitute a valid and sufficient claim." *Stebbins v. Geico Ins. Agency*, Case No. 2:18-cv-00590-APG-GWF, 2019 WL 281281, at *4 (D. Nev. Jan. 22, 2019) (citation omitted).

Regarding Plaintiff's failure to intervene claim, the Court finds that permitting amendment would not be futile because her allegations in the TAC suggest she could prove facts establishing Dunlap's failure to intervene.[3] More specifically, amendment would not be futile because Plaintiff's allegations in the proposed TAC clarify the timeline of relevant events and support Plaintiff's failure to intervene claim against Dunlap. The Court refers to the elements of a Section 1983 failure to intervene claim described in the Dismissal Order. (ECF No. 101 at 29.)

On March 6, 1979, Plaintiff told a counselor at LSU Medical Center that a girl named Michelle was murdered in Reno some years earlier. (ECF No. 147-1 at 9.) That same day, the counselor called police in Louisiana, who called Dennison in Reno, who met with Dunlap and Reno Police Captain Kenneth Pulver. (*Id.* at 9-10.) At that meeting, they decided Dennison would go down to Louisiana to investigate. (*Id.* at 10-11.) Dennison and some of the Louisiana police officer Defendants interrogated Plaintiff on March 7, 1979, though Dennison did not take any notes. (*Id.* at 11-16.) Dennison called Dunlap and Pulver after this interrogation session and told them Plaintiff had not provided a reliable confession. (*Id.* at 16.) Nonetheless, Dennison, Pulver, and Dunlap agreed Dunlap would fly down right away to try again the next day. (*Id.* at 17.) They spent part of March 8, 1979 with Plaintiff, unsuccessfully searching her mother's house for the purported murder weapon, and questioning her. (*Id.* at 17-18.) After they dropped her back off at LSU Medical Center, Dennison went and questioned Plaintiff again. (*Id.* at 18-20.) Then, later in the day on March 8, Dennison and Defendant Ashley (a Louisiana

---

[3]The Court notes Plaintiff pleads this claim in the alternative to her allegations to the effect that Dunlap actively participated in the creation of the report embodying Plaintiff's fabricated confession. (ECF No. 153 at 5.) Thus, Dunlap's alleged direct involvement in preparation of the falsified confession report is not necessarily inconsistent with Plaintiff's failure to intervene claim.

4

police officer) dictated a false confession report that included details Plaintiff never told them. (*Id.* at 20-22.) This false report—along with a related report that Dennison prepared at Dunlap's direction—was then used to convict and incarcerate Plaintiff. (*Id.* at 22-24.)

Based on these alleged events, Plaintiff argues that Dunlap failed to intervene either: (1) to prevent unlawful questioning of Plaintiff while he was in Louisiana; or (2) by declining to tell Dennison and Ashley not to prepare the false confession report later on March 8, 1979, after he left Louisiana; or (3) by relying on the false confession report when he prosecuted the criminal case against Plaintiff. (ECF No. 153 at 5-9.) The Court finds this failure to intervene theory based on the allegations in the proposed TAC recounted above sufficiently plausible such that it would not be futile to allow Plaintiff to amend her complaint to include them. Further, while Plaintiff cited out-of-circuit caselaw that supports her ability to hold Dunlap liable under a failure to intervene theory even if he was not physically present while Dennison and Ashley prepared the false report (*Id.* at 8-9), Dunlap cites none (ECF No. 152 at 4). Thus, the Court is unconvinced allowing Plaintiff to amend her failure to intervene claim would be futile.

Regarding her conspiracy claim, Plaintiff has added a number of factual allegations regarding where and when Dunlap met and/or spoke with Dennison and others to conspire to frame Plaintiff because they felt public pressure to solve a high profile murder case that had gone cold. (ECF No. 147-1 at 2, 10-24.) The Court refers to the elements of conspiracy claims as described in the Dismissal Order (ECF No. 101 at 30-31.) The more specific factual allegations in the proposed TAC resolve the concerns the Court expressed in dismissing Plaintiff's conspiracy claims as they were phrased in the SAC. (*Id.* at 30-33, 39.) The proposed TAC makes it clearer that Plaintiff alleges Dunlap and Dennison saw Plaintiff's discussion of the murder with her counselor as a break that would help them solve a cold case—which had received significant public attention—and worked together to frame Plaintiff through their trips to Louisiana in the interest of bringing the case to a successful, but dishonest, conclusion. As such, the Court finds granting

Plaintiff leave to amend her complaint, reinstating her conspiracy claims with greater factual specificity, is not futile at this time.

In sum, in light of Rule 15's presumption favoring amendment, and having rejected Defendants' arguments against amendment, the Court will grant Plaintiff's motion for leave to file her proposed TAC.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Plaintiff's Motion.

It is therefore ordered that Plaintiff's motion for leave to file her proposed TAC (ECF No. 147) is granted.[4]

DATED THIS 22nd day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[4]Plaintiff's TAC as filed may also correct the typo in ¶ 104. (ECF No. 153 at 10 n.3)